**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**EASTERN DIVISION**
No. _____ : _____-CV-_____-_____

| | |
|---|---|
| Lakiesha Cross as parent and natural guardian of S.C., a minor; Earlene Dunbar; and Ernest Sprueill, individually and on behalf of all those similarly situated, <br><br>      Plaintiffs, <br><br> vs. <br><br> Ciox Health, LLC, <br><br>      Defendant. | CLASS ACTION COMPLAINT <br> JURY TRIAL DEMANDED |

## I.   INTRODUCTION

1.      This is a lawsuit by Lakiesha Cross as parent and natural guardian of S.C., a minor; Earlene Dunbar; and Ernest Sprueill ("Plaintiffs"), individually and on behalf of all those similarly situated, seeking damages as well as declaratory and injunctive relief as a result of Defendant Ciox Health, LLC's practice of overcharging patients for their medical records in violation of federal and state law.

2.      The federal government's standards that protect the privacy of individually identifiable health information and the security of electronically protected health information, known as the "Privacy and Security Rules" of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), state that an individual has the right to access his or her protected health information (PHI) that is maintained by a "covered entity" or its business associate in a designated record set, for as long as the PHI is maintained in the designated record set (e.g. medical or billing records). *See* 45 C.F.R. § 164.524(a)(1).

Case 4:19-cv-00007-FL   Document 1   Filed 01/11/19   Page 1 of 21

3. If an individual requests an electronic copy of such PHI, then except under certain circumstances, a covered entity is required to provide the individual with an electronic copy to the extent it is readily producible. *See* 45 C.F.R § 164(C)(2)(i) and (ii).

4. The Privacy Rule permits the covered entity or its business associate to impose reasonable, cost-based fees to provide individuals (or personal representatives) with access to their PHI. The fee may include only the cost of copying (including supplies and labor) and postage, if the patient requests that the copy be mailed. If the patient has agreed to receive a summary or explanation of his or her protected health information, the covered entity may also charge a fee to prepare the summary or explanation. The fee may not include costs associated with searching for and retrieving the requested information. *See* 45 C.F.R § 164.524(c)(4).

5. Essentially, a medical-records vendor has three options: (1) It can charge the requesting patient based on its actual, calculated cost to provide the records; (2) it can charge the requesting patient based on an average of its actual, calculated costs to provide the records; or (3) if it chooses not to calculate and disclose its actual costs or average actual costs, the vendor can charge the requester a flat fee of $6.50.[1]

6. If an individual's request for access directs the covered entity to transmit the copy of PHI directly to another person designated by the individual, the covered entity or its business associate must provide the copy to the person designated by the individual. The individual's request must be in writing, signed by the individual, and clearly identify the designated person and where to send the copy of the PHI. *See* 45 C.F.R. § 164.524(c)(3)(ii).

---

[1] *See, e.g., Clarification of Permissible Fees for HIPAA Right of Access – Flat Rate Option of Up to $6.50 is Not a Cap on All Fees for Copies of PHI*, U.S. Department of Health & Human Services (May 23, 2016), https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/access/index.html#maximumflatfee.

7.     Even when an individual's request for access directs the covered entity to transmit the copy of PHI directly to another person designated by the individual, the fee limitations in 45 C.F.R § 164.524(c)(4) still apply.

8.     Defendant Ciox Health, LLC ("Ciox" or "Defendant") contracted with certain medical providers—including Vidant Multispecialty Clinic in Tarboro, North Carolina, and Vidant Medical Center in Greenville, North Carolina—to manage, maintain, and produce records pursuant to patients' medical records and billing requests. Thus, for the purposes of HIPAA, Ciox was the business associate of these covered entities.

9.     Ciox is fully aware of the federal regulations outlined above and in fact has taken legal action to stop the U.S. Department of Health & Human Services ("HHS") from enforcing the rules. Despite its knowledge of the rules, Ciox continues to violate the law by overcharging the patients for their medical records.

10.     Based on their attorneys' investigation, Plaintiffs believe there are hundreds or thousands of individuals who, like them, have requested medical bills, health information, records, and PHI from Ciox under the federal regulations set forth above. Ciox has blatantly disregarded its obligations to these individuals and continued to impose charges not allowed by law.

## II.     PARTIES

11.     Plaintiff Lakiesha Cross as parent and natural guardian of S.C., a minor, is a resident of Tarboro, North Carolina (Edgecombe County).

12.     Plaintiff and Class Representative Earlene Dunbar is a resident of Engelhard, North Carolina (Hyde County).

13.     Plaintiff and Class Representative Ernest Sprueill is a resident of Greenville, North Carolina (Pitt County).

14.     Defendant Ciox Health, LLC is a business registered and headquartered in Alpharetta, Georgia.

15.     Upon information and belief, Ciox was formerly known as HealthPort Incorporated and changed its name to Ciox Health in March 2016.  Ciox was created by the merger of HealthPort, IOD Inc., Care Communications Inc., and ECS.  The company was founded in 1976.

16.     Ciox has described itself as "a specialized medical-records provider that contracts with healthcare providers in all 50 states to retrieve and release individuals' PHI under HIPAA and relevant state privacy laws.  *See* Doc. No. 1 at ¶ 5, *Ciox Health, LLC v. Hargan*, Case No. 1:18-cv-40 (D.D.C.) (hereinafter *Hargan*).  Ciox provides medical-record retrieval services for three out of five hospitals in the United States and more than 16,000 physician practices, and handles more than 40 million medical-record requests annually.[2]  Ciox has conceded that it is subject to regulation by HHS under HIPAA.  Doc. No. 1 at ¶ 5, *Hargan.*

### III.     JURISDICTION AND VENUE

17.     As noted above, Named Plaintiffs are all North Carolina residents.

18.     Defendant Ciox is a Georgia limited-liability company that regularly transacts business throughout North Carolina, including Edgecombe, Hyde, and Pitt counties.

19.     Ciox willfully and purposefully avails itself of the privilege of doing business in the State of North Carolina, providing medical-record services for hospitals and medical providers in the state, including but not limited to Vidant Edgecombe Hospital and Vidant Multispecialty Clinic, both in Tarboro, N.C., and Vidant Medical Center in Greenville, N.C.

20.     The acts giving rise to this complaint occurred in Edgecombe, Hyde, and Pitt counties, among others.

---

[2] *About Ciox*, https://www.cioxhealth.com/about-us (last accessed Sept. 26, 2018).

21.     Ciox can be served through its registered agent for service of process in the State of North Carolina at Corporation Service Co., 2626 Glenwood Avenue, Suite 550, Raleigh, NC 27608.

22.     This Court has jurisdiction over this matter under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because upon information and belief the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which at least one of the Plaintiffs is a citizen of a State different than any Defendant, and the number of members of all the proposed plaintiff classes in the aggregate is more than 100.

23.     This Court can exercise supplemental jurisdiction over Plaintiffs' state-law claims under 28 U.S.C. § 1367.

24.     Venue is proper in this Court under 28 U.S.C. § 1391(a), (b), and/or (c) and 28 U.S.C. § 123(c)(2) because Ciox conducts business in this judicial district and a substantial part of the events and omissions giving rise to this action occurred in this district.

## IV.     FACTUAL BACKGROUND

### A. THE FEDERAL STATUTORY SCHEME

25.     Congress enacted HIPAA in 1996 "to improve . . . the efficiency and effectiveness of the health care system, by encouraging the development of a health information system through the establishment of standards and requirements for the electronic transmission of certain health information." HIPAA, Pub. L. 104–191, Aug. 21, 1996, 110 Stat 1936 (formerly codified at 42 U.S.C. § 1320d).

26.     In 2000, in accordance with instructions from Congress flowing from HIPAA, HHS published privacy standards for health information, now more commonly known as HIPAA's "Privacy Rule." *See* HHS, *Standards for Privacy of Individually Identifiable Health Information— Final Rule*, 65 Fed. Reg. 82462 (Dec. 28, 2000).

27.     The Privacy Rule created, for the first time, uniform federal standards governing the confidentiality, privacy, and lawful dissemination of medical records containing an individual patient's protected health information ("PHI"). *See* 45 C.F.R. § 164.501 (defining PHI).

28.     Among other things, the Privacy Rule addressed how consumers could obtain their PHI and how much they could be charged for copies of it.

29.     In 2009, with the goal of updating HIPAA and promoting development and use of electronic health records, Congress enacted the HITECH Act. *See* 42 U.S.C. § 300jj-11.

30.     The HITECH Act clarified the procedures under which a consumer would obtain their PHI. First, it made clear that individuals had the right to obtain a copy of their PHI in an electronic format and, if the individual chooses, to direct the covered entity to transmit such copy directly to an entity or person designated by the individual, provided that any such choice is clear, conspicuous, and specific. *See* 45 C.F.R. § 164.524(c)(3). Second, the Act capped the fee that a provider could charge the individual. *Id.* at § 164.524(c)(4).

31.     In 2013, HHS published amendments to the Privacy Rule, among others. *See* 78 Fed. Reg. 5566 (Jan. 25, 2013) (amending 45 C.F.R. Parts 160 and 164). These amendments became commonly known as the "Omnibus Rule."

32.     The Omnibus Rule announced that (1) individuals were entitled to obtain a copy of their health information in the "form and format" they wished, as long as that form and format is "readily producible" by the covered entity; (2) individuals must be able to request an electronic copy of their health information maintained in an electronic format; (3) individuals could direct a provider to transmit records directly to the individual's designee; and most importantly for purposes of this Complaint, **(4) fees for electronic copies could not include costs associated with searching for or retrieving the requested information.** *Id.*

33.     In 2016, HHS issued a guidance document clarifying the HITECH rule, including its limits on what patients or their designated recipients may be charged for healthcare information.[3] The guidance document stresses and confirms that "[t]he Privacy Rule permits a covered entity to impose a reasonable, cost-based fee if the individual requests a copy of the PHI,"; that the fee "may not include costs associated with verification; documentation; searching for and retrieving the PHI; maintaining systems; recouping capital for data access, storage, or infrastructure"; and that these rules apply even "when an individual directs that the PHI be sent to another person." *Id.*

34.     The upshot is that under the HITECH Act and its implementing rules, as interpreted by HHS:

- If an individual requests an electronic copy of that PHI, then except under certain circumstances, a covered entity is required to provide the individual with such electronic copy to the extent it is readily producible. *See* 42 U.S.C. § 17935(e); 45 C.F.R § 164(C)(2)(i) and (ii). A covered entity must act on the individual's request for access no later than 30 days after it receives the request. *See* 45 C.F.R. § 164.524(b)(2).

- Under the HIPAA Privacy Rule, if an individual requests a copy of their protected health information ("PHI") or agrees to a summary or explanation of such information, the covered entity or its business associate may impose a reasonable, cost-based fee, provided that the fee includes only the cost of: (1) labor for copying the PHI; (2) supplies for creating a paper or electronic copy of the PHI; (3) postage, when the individual requests that a copy or summary of the PHI be mailed; and/or (4) preparing an explanation or summary of the PHI, if agreed to by the individual. *See* 45 CFR §164.524(c)(4).

- Under 45 C.F.R. §164.524(c)(4)(i), labor costs of copying may not include the costs associated with searching for and retrieving the requested information. Fees associated with maintaining systems and recouping capital for data access, storage, and infrastructure are not considered reasonable, cost-based fees, and are not permissible to include under HITECH. Accordingly, covered entities, including

---

[3] *See* HHS, Individuals' Right under HIPAA to Access their Health Information 45 CFR § 164.524    (Feb.    25,    2016),    https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/access/index.html (hereinafter "2016 Guidance").

Ciox, cannot charge a "retrieval fee" for electronic or paper medical records. *See id.*

- As explained by HHS, "[t]he fee may not include costs associated with verification; documentation; searching for and retrieving the PHI; maintaining systems; recouping capital for data access, storage, or infrastructure; or other costs not listed above even if such costs are authorized by State law." 45 CFR 164.524(c)(4) (emphasis added).

- If requested by an individual, a covered entity or its business associate must "transmit the copy of protected health information directly to another person designated by the individual." *See* 45 C.F.R. § 164.524(c)(3).

- When records are requested by an individual for transmission to an individual's designee, the records provider may not charge any more for the records than it would have charged if the individual was receiving the records. In other words, the so-called "Patient Rate" applies even when the patient has the records sent to their lawyer. *See* HHS, *2016 Guidance* (explaining that "[t]he same requirements for providing the PHI to the individual, **such as the fee limitations** and requirements for providing the PHI in the form and format and manner requested by the individual, apply when an individual directs that the PHI be sent to another person.")

## B. CIOX AND THE HITECH RULE

35.    Ciox manages the process of responding to a medical-records request for its hospital and clinic clients, including receiving the request, locating responsive documents, providing a response to the patient, invoicing the patient, and collecting payment.

36.    Ciox advertises itself as providing HIPAA-compliant responses to medical records requests from patients and law firms.

37.    Ciox advertises itself as providing a "prompt and complete response" to medical-records requests, claiming that it can provide "cost reduction" to individuals requesting medical records due to its use of electronic delivery of medical records which allows requesters to "view records and only print the ones you want to use."

38.     Ordinarily, Ciox sends out the patient's requested medical records with its invoice, overcharging for such records.

39.     For electronic deliveries of medical records, Ciox routinely charges an improper and unlawful series of fees, including a "basic fee" of $5.00 or $10.00; a "retrieval fee" of $5.00; a $2.00 "electronic data archive fee," and per-page copy fees even when no paper copies are being provided to the requester.

40.     Ciox is aware that the Privacy Rule permits covered entities to impose only reasonable, cost-based fees to provide individuals (or their designated recipient) with copies of their medical records.

41.     Ciox is aware that it may charge individuals only on the basis of its actual costs, or an average of its actual costs, and that if it chooses not to calculate and specify its actual costs or average actual costs, it may charge no more than $6.50 for an individual's medical records. However, it defiantly and continually does so anyway.

42.     For example, when a patient named Suzanne Mitchell in November 2016 requested her records from a Nebraska hospital and asked that the records be sent to her lawyers, Ciox sent her an invoice for $224.65 for 353 pages of medical records, including an unlawful "basic fee," per-page fees, and $13.45 to ship a CD of the records. Ciox refused to adjust the invoice to reflect reasonable costs allowed under the HITECH rule.

43.     Mitchell filed a complaint with HHS about these billing practices. In a letter to the hospital dated March 22, 2017, HHS stated that Ciox's charges violated the HITECH rule and warned that the department might initiate a formal investigation if it received similar allegations.

44.     In January 2018, not long after the HHS warning letter, Ciox filed a lawsuit against the agency over its interpretation of the HITECH Act. *See Ciox Health, LLC v. Hargan*, Case No. 1:18-cv-40 (D.D.C.).

## B. FACTS SPECIFIC TO NAMED PLAINTIFFS

45.     Here, as set forth in greater detail below, Plaintiffs likewise properly requested medical records, information, bills, and/or protected health information (PHI) from their medical providers, and directed that the records be sent to their lawyers. The medical providers forwarded Plaintiffs' requests to Ciox. Ciox did not follow the HITECH cost rule in responding.

46.     This practice of knowingly failing to follow a patient's request and federal regulations is a wrongful and deceptive practice. This practice is also negligent and unjust. The Plaintiffs named herein have been harmed by these practices.

### *Plaintiff S.C.'s Medical-Records Request*

47.     Plaintiff S.C. is a minor and the son of Lakiesha Cross. In a written request dated May 15, 2018 and signed by his mother, Lakiesha Cross, Plaintiff S.C. requested copies of his medical records from Vidant Edgecombe Hospital in Tarboro, North Carolina.

48.     In his request, through his mother, S.C. requested copies of his medical records in electronic format only.

49.     S.C.'s request was headlined, "PATIENT DIRECTIVE TO HEALTHCARE PROVIDER PURSUANT TO HITECH RECORDS REQUEST."

50.     S.C. directed the recipient of this request to send the records to his attorney, Christopher C. Kessler, The Kessler Law Firm P.L.L.C., P.O. Box 8064, Greenville, NC 27835.

51.     S.C.'s request was accompanied by documents from The Kessler Law Firm P.L.L.C. which made clear that the HITECH Act, 42 U.S.C. §17935(e)(1), and the statute's implementing regulation at 45 C.F.R. § 164.524(c)(4), applied to the request.

52.     Ciox responded by sending a bill for $18 to The Kessler Law Firm.  The billed total from Ciox included a "Basic Fee" ($5.00); a "Retrieval Fee" ($5.00); eight pages billed at 75 cents each ($6.00); fourteen pages at no cost; and an "Electronic Data Archive Fee" ($2.00).

53.     In its response to S.C.'s request, Ciox did not state that these fees reflected its actual costs, or that these fees reflected an average of its actual costs.  In its response, Ciox did not reveal that these fees are unlawful under the HITECH act.

54.     S.C.'s attorney paid the expense.  The expense was deducted from S.C.'s net settlement in his personal-injury matter.  Therefore, S.C. has sustained damages.

### Plaintiff Earlene Dunbar's Medical-Records Request

55.     In a written request dated May 17, 2018 and signed by her, Plaintiff Earlene Dunbar requested copies of her medical records from Vidant Medical Center in Greenville, North Carolina.

56.     In her request, Ms. Dunbar requested copies of her medical records in electronic format only.

57.     Ms.  Dunbar's  request  was  headlined,  "PATIENT  DIRECTIVE  TO HEALTHCARE PROVIDER PURSUANT TO HITECH RECORDS REQUEST."

58.     Ms. Dunbar directed the recipient of the request to send the records to her attorney, Christopher C. Kessler, The Kessler Law Firm P.L.L.C., P.O. Box 8064, Greenville, NC 27835.

59.     Ms. Dunbar's request was accompanied by documents from The Kessler Law Firm P.L.L.C. which made clear that the HITECH Act, 42 U.S.C. § 17935(e)(1), and the statute's implementing regulation at 45 C.F.R. § 164.524(c)(4), applied to his request.

60.     Ciox responded by sending a bill for $21.25 to The Kessler Law Firm.  The billed total from Ciox included a "Basic Fee" ($5.00); a "Retrieval Fee" ($5.00); eleven pages billed at

75 cents each ($8.25); two pages at 50 cents each ($1.00); fourteen pages at no cost; and an "Electronic Data Archive Fee" ($2.00).

61.     In its response to Ms. Dunbar's request, Ciox did not state that these fees reflected its actual costs, or that these fees reflected an average of its actual costs. In its response, Ciox did not reveal that these fees are unlawful under the HITECH act.

62.     Ms. Dunbar's attorney paid the expense. Ms. Dunbar is liable for the expense.

### Plaintiff Ernest Sprueill's Medical-Records Request

63.     In a written request dated April 13, 2018 and signed by him, Plaintiff Ernest Sprueill requested copies of his medical records from Vidant Medical Center in Greenville, North Carolina.

64.     In his request, Mr. Sprueill requested copies of his medical records in electronic format only.

65.     Mr. Sprueill's request was headlined, "PATIENT DIRECTIVE TO HEALTHCARE PROVIDER PURSUANT TO HITECH RECORDS REQUEST."

66.     Mr. Sprueill directed the recipient of the request to send the records to his attorney, Christopher C. Kessler, The Kessler Law Firm P.L.L.C., P.O. Box 8064, Greenville, NC 27835.

67.     Ciox responded by sending a bill for $38.25 to The Kessler Law Firm. The billed total from Ciox included a "Basic Fee" ($5.00); a "Retrieval Fee" ($5.00); eleven pages billed at 75 cents each ($8.25); thirty-six pages at 50 cents each ($18.00); fourteen pages at no cost; and an "Electronic Data Archive Fee" ($2.00).

68.     In its response to Mr. Sprueill's request, Ciox did not state that these fees reflected its actual costs, or that these fees reflected an average of its actual costs. In its response, Ciox did not reveal that these fees are unlawful under the HITECH act.

69.     Mr. Sprueill's attorney paid the expense.  The expense was deducted from Mr. Sprueill's net settlement in his personal-injury matter.  Therefore, Mr. Sprueill has sustained damages.

70.     In response to each of these requests, Ciox violated the HITECH act and overcharged Plaintiffs for their medical records.  In each case, Ciox imposed a "Basic Fee." In nearly every case, Ciox imposed a "Retrieval Fee."  In each case, Ciox imposed an "Electronic Data Archive Fee."  In none of the cases did Ciox state that these fees reflected its actual costs, or that these fees reflected an average of its actual costs, as required by federal law.

71.     Plaintiffs suffered tangible and contingent monetary losses as a result of the wrongful practices.

72.     Plaintiffs come within one or more of the Classes injured by Ciox's wrongful practices.

## V.     CLASS ALLEGATIONS

73.     Plaintiffs bring this action on behalf of themselves and the class pursuant to Fed. R. Civ. P. 23.

74.     **Class Definition:** Plaintiffs propose the following class definitions:

a.      **Damages Class A -** <u>Patient-Directed Requests Subjected to Ciox's Wrongful Billing Practice, Where Patient Has Paid the Improperly Billed Amount</u>. All persons in the United States who: (1) through their counsel, requested health information under the HITECH act and asked that the medical records and/or medical bills be provided to his or her attorney; (2) were unlawfully charged in violation of U.S.C. §17935(e)(2), and 45 C.F.R. § 164.524(c)(4); (3) incurred a liability for the unlawfully billed amounts; and (4) had the unlawfully billed amounts subtracted from their personal-injury settlement or judgment.

b.     **Damages Class B** — <u>Patient-Directed Requests Subjected to Ciox's Wrongful Billing Practice, Where Patient Has Not Yet Paid the Improperly Billed Amount</u>. All Persons in the United States who: (1) through their counsel, requested health information under the HITECH act and asked that the medical records and/or medical bills be provided to his or her attorney; (2) were billed in violation of U.S.C. §17935(e)(2), and 45 C.F.R. § 164.524(c)(4); and (3) cannot obtain their records unless they pay the unlawfully billed amounts.

75.     Should the Court decide not to certify the nationwide classes described above, Plaintiffs will then seek certification of state Subclasses corresponding to Class members' states of residency.

76.     **Numerosity:** Plaintiffs' proposed classes, as authorized by Rule 23(b) and described above, are likely so numerous that joinder of all members is impractical. By its own description, Ciox provides medical-record retrieval services for more than 18,000 hospitals and medical providers in the United States, in all 50 states, responding to more than 40 million medical-record requests annually.

77.     **Typicality:** The plaintiffs' claims and/or defenses are typical of the claims and/or defenses of the class in that the other class members have suffered and will continue to suffer property loss, including but not limited to loss of monies, because of Ciox's standardized record-billing practices.

78.     **Named Class Members Identifiable.** Class members can be identified, upon information and belief, through Ciox's records. Ciox invoices each contain an invoice number, date, customer number, recipient address, billed address, medical-provider name and address, patient name, patient's date of birth, and the description of fees charged. They are likely contained in one or more databases that can be used to identify and contact Class members.

79.     **Adequacy of Representation:** Plaintiffs will fairly and adequately protect the Classes because (1) Plaintiffs have retained counsel that are competent and experienced in the prosecution of such litigation, (2) Plaintiffs and their counsel are aware of no conflicts of interest between plaintiffs and absent Class members or otherwise; and (3) Plaintiffs are knowledgeable concerning the subject matter of this action and will assist counsel in the prosecution of this litigation.

80.     This lawsuit involves questions of law and fact that are common to the class.

81.     **Common Questions of Law and Fact:** Questions of law and fact which are common to the class with respect to the claims against Ciox predominate over any individual questions. Among such questions of law and fact are:

A.  Whether Ciox's procedures violate the North Carolina Unfair Trade Practices Act, N.C. Gen. Stat. § 75-1.1 et seq., and/or the consumer statutes of various states, by violating the HITECH Act.

B.  Whether Ciox's procedures violate the North Carolina Unfair Trade Practices Act, N.C. Gen. Stat. § 75-1.1 et seq., and/or the consumer statutes of various states, by continually overcharging individuals although it has been told by the federal government that its practices are unlawful.

82.     There is a community of interest among the Class Members in obtaining appropriate compensatory damages and declaratory relief.

83.     **Superiority:** A class action provides a fair and efficient method for adjudicating this controversy and is superior to the other methods of adjudication in that (1) neither the size of the Classes, nor any other factor, make it likely that difficulties will be encountered in the management of this action as a class action; (2) the prosecution of separate actions by individual

Class members, or the individual joinders of all Class members in this action, would be impracticable and would create a large and unnecessary burden on the resources of courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of each member of the class; (3) because of the disparity of resources available to Ciox compared to those available to individual Class members, prosecution of separate actions would work a financial hardship on many Class members, or make it impossible for individual Class members to bring separate actions; and (4) the conduct of this action as a class action conserves the resources of the parties and the court system and protects the rights of each member of the Classes and meets all due-process requirements as to fairness to all parties. A class action is also superior to maintenance of these claims on a claim-by-claim basis when all actions arise out of the same circumstances and course of conduct.

84. **Individual Prosecution Unlikely and Unreasonable.** Plaintiffs and their counsel are not aware of any interest that members of the Classes would have in individually controlling the prosecution of separate actions, especially given the size of each individual claim, and the cost, expense and difficulty of litigating against Ciox. Plaintiffs and their counsel are also not aware of any actions already commenced on behalf of the Classes alleging similar claims or seeking similar relief. Given the similar nature of Class members' claims and the absence of material differences in the state statutes and common-law doctrine upon which the class members' claims are based (in the event North Carolina law is found not solely apply to the claims of Class members residing outside North Carolina), a class action should be managed by this court. A significant economy of scale exists in concentrating the litigation in this forum.

85. The proposed Class fulfills the certification criteria of Rule 23, and certification of the above-defined class is appropriate under the provision of Rule 23(b).

## VI. CAUSES OF ACTION

### COUNT I
### VIOLATION OF THE NORTH CAROLINA UNFAIR TRADE PRACTICES ACT

86.     Plaintiffs re-allege and herein incorporate the paragraphs set forth above.

87.     The North Carolina Unfair Trade Practices Act, N.C. Gen. Stat. § 75-1.1 *et seq.* ("NCUTPA") prohibits "unfair or deceptive acts or practices in or affecting commerce."

88.     Defendant's acts, omissions, misrepresentations, practices, and non-disclosures described above were unfair, deceptive, and fraudulent under the NCUTPA.

89.     Plaintiffs and the proposed Class members were damaged when they requested health-related information under the HITECH Act and received responses from Ciox that disregarded the requirements of the Act.  Ciox's knowing and willful decision to disregard the HITECH Act's fee requirements, and to withhold the requested documents unless Plaintiffs and Class members paid the unlawfully inflated and improper invoices, constituted a deceptive and unlawful practice.

90.     Ciox's acts and omissions as described herein, and as will be further developed in discovery, were and are unfair and deceptive acts or practices in trade and commerce, and affect the public interest.  As such, Ciox's acts and omissions as described herein, and as will be further developed in discovery, are in violation of the NCUTPA.

91.     Ciox's unlawful and improper practices directly and proximately caused injury to Plaintiffs and other Class members' property interests.

92.     During the Class Period, Ciox's unlawful conduct had a substantial effect on North Carolina commerce.

93.     Plaintiffs are entitled under N.C. Gen. Stat. § 75-16 to bring a civil action to remedy Ciox's violations and collect treble damages, reasonable attorneys' fees, costs of suit, and such other relief as may be permitted by statute.

94.     Accordingly, Plaintiff and Class members seek all relief available under N.C. Gen. Stat. §§ 75-1.1 and 75-16.

## COUNT II
## NEGLIGENT MISREPRESENTATION

95.     Plaintiffs re-allege and herein incorporate the paragraphs set forth above.

96.     Ciox made and continue to make the negligent misrepresentation to Plaintiffs and members of the putative Classes that they were and are required to remit payment for "search" and/or "retrieval" fees to receive PHI to which Plaintiffs and the putative class members were entitled.

97.     When Ciox made the representation to Plaintiffs and members of the putative Classes that they were and are required to remit payment for "search" and/or "retrieval" fees, Ciox knew the statement was false because such fees were prohibited by the HITECH Act.

98.     Plaintiffs paid the above-referenced fees believing that it was necessary to obtain their PHI.

99.     Ciox negligently collected "search" or "retrieval" fees from Plaintiffs to obtain PHI to which Plaintiffs were entitled, when Ciox knew or should have known that such fees were prohibited.

100.    As a result of this negligent misrepresentation regarding the necessity of paying search or retrieval fees to receive PHI to which Plaintiffs were and are entitled, Plaintiffs and the putative Class members have suffered significant economic injury.

## COUNT III
## UNJUST ENRICHMENT

101.    Plaintiffs re-allege the paragraphs set forth above and incorporate them as if fully set forth herein.

102.    Ciox wrongfully, negligently, and illegally collected and maintained fees for "search" and "retrieval" from Plaintiffs and members of the putative class.

103.    Upon information and belief, Ciox has realized millions of dollars in revenue from said wrongful conduct.

104.    Therefore, Plaintiffs conferred a measurable benefit on Ciox.

105.    Ciox has been unjustly enriched by charging and accepting these unlawful fees from Plaintiffs and members of the putative class, and therefore it would be unjust and improper to allow Ciox to retain the fees.

## COUNT IV
## DECLARATORY AND INJUNCTIVE RELIEF

106.    Plaintiffs re-allege and herein incorporate the paragraphs set forth above.

107.    Plaintiffs seek a judicial declaration that Ciox's practices violate North Carolina law as described in Counts I and II.  Specifically, Plaintiffs seek an order from the Court enjoining Ciox from sending bills or invoices containing unlawful fees, collecting unlawful fees, or responding to patients' requests under the HITECH Act for healthcare information in any other way that violates U.S.C. § 17935(e)(2), or 45 C.F.R. § 164.524(c)(4).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request a judgment against Ciox:

1.    **Class Certification.** A finding that this action should proceed as a class action under Fed. R. Civ. P. 23.

530788.8

19

2.     **Declaratory Relief.** A judicial declaration that Ciox's billing/invoicing practices when a patient requests healthcare information under the HITECH Act violates North Carolina law, and/or the law of the states where members of the putative Classes reside, and that all previously paid invoices involving Class members were unlawful.

3.     **Equitable Relief.** Equitable relief in the form of restitution and/or disgorgement of all money received by Ciox as a result of the unlawful conduct alleged herein.

4.     **Damages.** Damages in the amount to be proven at trial including but not limited to all monies improperly taken as a result of Ciox's conduct.

5.     **Exemplary Damages.** Damages and such other relief, such as treble damages, under N.C. Gen. Stat. §§ 75-1.1 and 75-16.

6.     **Punitive Damages.** For punitive damages as allowed by North Carolina law, and/or the law of the states where members of the putative Classes reside,

7.     **Fees and Costs.** The costs of bringing this suit, including but not limited to reasonable attorneys' fees and costs under applicable state and federal law.

8.     For such other relief that the Court deems just and proper.

Dated: January 11, 2019

Christopher C. Kessler
The Kessler Law Firm, PLLC
PO Box 8064
Greenville, NC 27835
Tel: 252-321-2535
Fax: 252-493-0585
cck@kesslerlawfirmpllc.com
NC #18696
Local Civil Rule 83.1(d) Counsel for Plaintiffs


Robert K. Shelquist (MN #021310X)
*(Notice of Special Appearance to be filed)*
Eric N. Linsk (MN #0388827)
*(Notice of Special Appearance to be filed)*
Lockridge Grindal Nauen P.L.L.P.
100 Washington Avenue S., Suite 2200
Minneapolis, MN 55401
Tel:    (612) 339-6900
Fax:    (612) 339-0981
rkshelquist@locklaw.com
rnlinsk@locklaw.com
Local Civil Rule 83.1(e)

J. Olin McDougall, II (SC #6948)
*(Notice of Special Appearance to be filed)*
McDougall Law Firm, LLC
P.O. Box 1336
Beaufort, SC 29901
Tel:    843-379-7000
Fax:    843-379-7007
lin@mlf.law
Local Civil Rule 83.1(e)

***Attorneys for Plaintiffs and the Putative Classes***